IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STAR LOCK SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:07-cv-00797 |
| vs. | ) | |
| | ) | Judge Frost |
| | ) | |
| TRITEQ LOCK AND | ) | |
| SECURITY, L.L.C., | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

<u>MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, Star Lock Systems, Inc. ("Star Lock"), by and through its undersigned counsel, hereby moves for summary judgment in its favor on Counts I and II of its Second Amended Complaint against Defendant, TriTeq Lock & Security, LLC ("TriTeq"), and correspondingly, the counterclaims asserted by TriTeq against Star Lock. For the reasons set forth in the following memorandum of law, which is incorporated herein, summary judgment in Star Lock's favor is appropriate because TriTeq has plainly breached the Settlement Agreement and the Escrow Agreement between the parties by (1) failing to pay all monies due to Star Lock after it failed to file its reexamination request timely according to the Settlement Agreement, or alternatively (2) failing to authorize release of all funds from the Escrow Account immediately after the Patent Office denied the reexamination request; and (3) withholding amounts from quarterly payments it has made to Star Lock and/or into the Escrow Account on January 31, April 29, and July 20, 2008. There is no genuine issue of material fact bearing on the resolution of these questions; instead, only a straightforward reading of the parties' contracts is required.

Accordingly, Star Lock submits that summary judgment is appropriate and respectfully requests that judgment be entered in its favor on Counts I and II of its Second Amended Complaint, and on Counts I-III of TriTeq's counterclaims against Star Lock.

Respectfully submitted,

/s/Thomas B. Ridgley
Thomas B. Ridgley           (0000910)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio  43216-1008
Telephone:     (614) 464-6229
Facsimile:     (614) 719-4923
tbridgley@vssp.com

Trial Attorney for Plaintiff, Star Lock Systems, Inc.

OF COUNSEL:

William H. Oldach III          (0064370)
VORYS, SATER, SEYMOUR AND PEASE LLP
1828 L Street, N.W.
Eleventh Floor
Washington, DC  20036
Telephone:     (202) 467-8800
Facsimile:     (220) 467-8900

Peter A. Lusenhop          (0069941)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, PO Box 1008
Columbus, Ohio  43216-1008
(614) 464-8263 Phone
(614) 719-4831 Fax

<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

**I.      INTRODUCTION**

   This case presents a clear and straight-forward question of contract interpretation, easily resolvable on summary judgment.  Simply put, TriTeq has committed two distinct breaches of two related agreements that it has entered into with Star Lock, a Settlement Agreement and an Escrow Agreement.  First, TriTeq failed to timely or properly file a request for reexamination of a patent owned by Star Lock; and second, even if the request had been properly and timely filed, the request was denied by the Patent Office, resulting in all escrow funds becoming immediately due and payable to Star Lock.  TriTeq, however, has failed to cooperate with Star Lock in releasing all the funds from the Escrow Account set up pursuant to the Escrow Agreement.  As a result of these breaches of the agreements between the parties, Star Lock is owed over $270,000 currently sitting in the Escrow Account as well as additional amounts that TriTeq has withheld from its escrow payments, plus interest thereon.

   This motion essentially reincorporates on largely the same grounds the summary judgment motion that was filed by Star Lock in May 2008.  That motion was denied without prejudice by the Court in advance of a settlement conference before the Court in November 2008.  Following that conference, the Court entered an order allowing TriTeq a certain period of time within which to take a deposition of Star Lock.  (See Docket Entry # 66.)  However, TriTeq chose not to take any deposition within the time period set by the Court, and thus no evidence has been adduced that would cloud any of the legal arguments that Star Lock made in its original motion, and which it makes again here.

Star Lock therefore asks that this Court enter summary judgment in Star Lock's favor on Counts I and II of its Second Amended Complaint,[1] as well as on Counts I – III of TriTeq's Counterclaims, and order TriTeq to cooperate with Star Lock in authorizing the release of the remaining funds in the Escrow Account and to pay Star Lock the additional sums it has withheld from its payments.

## II.     FACTUAL BACKGROUND

### A.     The Parties' Agreements

As this Court is aware, in 2003 Star Lock sued TriTeq and several other defendants for infringement of certain patents arising from TriTeq's manufacture and sale of, and the other defendants' use of, a latching device (the "TriTeq Latch") that was incorporated in a beverage vending machine called the "High Visibility Vender".

Ultimately, the patent litigation was settled, after lengthy negotiations, with TriTeq and several other defendants entering into a Settlement and Non-Exclusive License Agreement (the "Settlement Agreement") with Star Lock, a copy of which is attached as Exhibit A,[2] and TriTeq entering into an Escrow Agreement with Star Lock, a copy of which is attached as Exhibit B.  Additional details regarding the resolution of issues that might arise from payments pursuant to the Settlement Agreement were addressed in an Addendum and Modification to Settlement and Non-Exclusive License Agreement (the "First Addendum"), a copy of which is attached as Exhibit C.

---

[1] Star Lock has also asserted in Count III of its Second Amended Complaint that TriTeq failed to release a certain portion of the funds in the Escrow Account (approximately $385,000) after the Patent Office confirmed the '161 Patent on or about September 5, 2008.  (See Docket Entry # 62.)  As set forth in greater detail below, the parties have resolved this issue, and Star Lock expects to be in position to dismiss Count III shortly.

[2] All exhibits are attached to an authenticating Declaration of William H. Oldach III, being filed contemporaneously herewith.

Pursuant to the Settlement Agreement, TriTeq was to pay $6.50 per unit for each TriTeq Latch sold by TriTeq from the date of the introduction of the TriTeq Latch until the expiration of the '161 Patent on June 11, 2008.  Past sales through January 1, 2007 were covered through a lump sum payment, and the sales going forward were to be covered by payments within thirty days of the close of each calendar quarter.  (See Exhibit A, ¶ 3.)

TriTeq, however, still contended that Star Lock's patent was invalid and did not want to relinquish all benefit of having that contention resolved.  Therefore, the Settlement Agreement gave TriTeq a specific, limited time period within which it could file a single, second reexamination request of the patent (the "Second Reexamination Request").[3]  The Settlement Agreement provided that $3.00 of the $6.50 per unit paid by TriTeq would be a "Non-Contingent Payment" payable directly to Star Lock, and the remaining $3.50 per unit would be a "Contingent Payment" to be paid by TriTeq into an Escrow Account established pursuant to the Escrow Agreement by and among Star Lock, TriTeq, and National City Bank as Escrow Agent. The Settlement Agreement provides in part as follows (emphasis added):

> 4.1    It is expressly contemplated by the Parties that TriTeq will file a request for a second reexamination of the '161 Patent with respect to Claims 27 and 28 of the '161 Patent (the "Second Reexamination").  *If TriTeq does not file the Second Reexamination request by March 30, 2007, then Star Lock shall provide notice to TriTeq in the manner set forth in paragraph 8.1, below, and TriTeq shall have thirty (30) days therefrom to cure its failure by filing the request.  If TriTeq does not cure the failure, then all amounts then in the Escrow Account, or required to be in the Escrow Account as of that date, whichever amount being greater, shall be immediately payable to Star Lock, and any Contingent Payments to be paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above, shall instead be paid directly to Star Lock by TriTeq.*
>
> 4.2    *TriTeq shall file only a single Second Reexamination request of the '161 Patent and shall not file, itself or through any other party, any further reexamination request or knowingly cooperate in any*

---

[3] TriTeq had previously filed a first reexamination request during the patent litigation.

*third party request; provided, however, that TriTeq may resubmit or supplement the single Second Reexamination request that it files for purposes of correcting clerical or procedural flaws in the request, so long as no additional new prior art reference or new basis for arguing the rejection of the claims is asserted*.

Accordingly, pursuant to Paragraphs 4.1 and 4.2, if TriTeq (1) failed to file the Second Reexamination Request timely, (2) did not limit itself to a single Second Reexamination Request, or (3) improperly sought to make substantive (as opposed to clerical or procedural) changes in the Second Reexamination Request, then any funds in the Escrow Account would have to be paid to Star Lock, and all future Contingent Payments, rather than being made into the Escrow Account by TriTeq, would have to be paid directly to Star Lock instead.

B.    TriTeq's Failure To File

TriTeq failed to file the Second Reexamination Request by March 30, 2007, as provided by Paragraph 4.1 of the Settlement Agreement.  Therefore, on April 10, 2007, Star Lock sent TriTeq a notice as provided for in Paragraphs 4.1 and 8.1 of the Settlement Agreement, requiring that TriTeq cure its failure to file the Second Reexamination Request within thirty days of the notice, or else all Contingent Payments would be due to Star Lock directly, and TriTeq would not be able to use any results from a second reexamination of the '161 Patent to avoid its duty to pay Contingent Payments directly to Star Lock.  A true and correct copy of this notice is attached as Exhibit D.

On May 10, 2007, the last day permitted by the Settlement Agreement following Star Lock's notice, TriTeq submitted materials purporting to constitute a Second Reexamination Request with the Patent Office.  A true and correct copy of the transmittal form for these voluminous materials is attached as Exhibit E.

On May 30, 2007, TriTeq sua sponte submitted a corrected version of these materials to the Patent Office, stating that it had inadvertently submitted a "near final" version of the materials rather than a final version. Star Lock has acknowledged that the May 30, 2007 submission was within the parameters of correcting clerical and procedural flaws as TriTeq was permitted to do under Paragraph 4.2 of the Settlement Agreement. A true and correct copy of TriTeq's cover letter describing these changes is attached as Exhibit F.

On June 18, 2007, the Patent Office mailed a paper stating that ***both versions*** of the materials submitted by TriTeq were deficient in key substantive respects and giving TriTeq thirty days to cure the substantive defects. A true and correct copy of this paper is attached as Exhibit G. The Patent Office stated in this paper that the materials would have to meet all statutory and regulatory requirements before a filing date could be accorded to the Request. (Ex. G at p.6.)

On July 9, 2007, TriTeq submitted a paper with the Patent Office to cure the substantive defects noted by the Patent Office in its June 18, 2007 paper. A true and correct copy of this paper is attached as Exhibit H. In this paper TriTeq specifically requested that the Request be accorded its "original filing date." (Ex. H at p.3.)

On July 17, 2007, the Patent Office mailed a paper stating that while TriTeq had now cured the substantive defects in its submission, the Second Reexamination Request would be accorded the filing date of July 9, 2007, the date when TriTeq finally filed a substantively correct Request. Thus, the Patent Office would have until ninety days after the filing date (or October 7, 2007) to decide whether to grant the Second Reexamination Request, rather than ninety days from the last date permitted by the Settlement Agreement and Star Lock's notice

(which would have been August 8, 2007). A true and correct copy of the July 17, 2007 paper is attached as Exhibit I.

      C.     <u>The Funding Of The Escrow Account And Denial Of The Request</u>

      Meanwhile, on or about July 3, 2007, Star Lock learned that TriTeq had not funded the Escrow Account with the Contingent Payment by June 30, 2007, as required by Paragraph 3.2(a) of the Settlement Agreement. Accordingly, on July 3, 2007, Star Lock sent TriTeq a notice as provided for in Paragraphs 3.4 and 8.1 giving TriTeq thirty days to cure its failure to fund the Escrow Account. On August 2, 2007, the last day for TriTeq to comply with Star Lock's notice, William Denison, the president of TriTeq, sent Star Lock a letter, a true and correct copy of which is attached in Exhibit J,[4] stating that TriTeq had not fully funded the Escrow Account but had paid into the Account only $2.00 per unit instead of $3.50 per unit, or $363,708.00, leaving the Escrow Account underfunded. The letter essentially confessed that TriTeq's failure to fund fully the Escrow Account was a material breach of the Agreement, and Star Lock filed this Action on August 13, 2007.

      The Patent Office then denied TriTeq's Reexamination Request in a decision dated October 5, 2007 (the "Decision"). A true and correct copy of this Decision is attached as Exhibit K. The Decision stated in part that "no substantial new question of patentability is raised by the request for reexamination and prior art cited therein." (Ex. K at 2.)

      Paragraph 4.3 of the Settlement Agreement provides as follows:

      4.3     If the request for the Second Reexamination is denied by the U.S. Patent Office ***because it did not raise a substantial new question of patentability***, then all amounts then in the Escrow Account or required to be in the Escrow Account as of that date, whichever amount being greater, shall be ***immediately*** payable to Star Lock, and any Contingent Payments required to be paid into the Escrow Account by TriTeq from

---

[4] For ease of reference, Exhibit J comprises all documents evidencing deposits into the Escrow Account.

that date forward pursuant to paragraph 3, above, shall instead be paid
directly to Star Lock by TriTeq.

(Ex. A at ¶ 4.3 (emphasis added).)  Meanwhile, paragraph 3(a) of the Escrow Agreement

provides, in pertinent part:

> With respect to any Notice, Star Lock or TriTeq (the "Noticing Party")
> shall provide a notice to Escrow Agent and to the other party (the "Other
> Party") specifying in reasonable detail the nature and dollar amount of any
> claim (a "Claim") it may have under Paragraph 4 of the Settlement
> Agreement.  Such a Notice does not require or permit any action by the
> Escrow Agent.  Rather, the Other Party, upon receipt of the Notice, shall
> consider whether to consent to payment being made pursuant to terms
> identified in the Notice and, if it deems appropriate in good faith, shall
> join the Noticing Party in submitting joint written instructions to the
> Escrow Agent.  Upon receipt of a jointly signed instruction, the Escrow
> Agent shall make payment as identified in the joint submission.

(Ex. B at ¶ 3(a).)

On October 16, 2007, Star Lock sent a Final Notice to the Escrow Agent

under Paragraph 3(a) of the Escrow Agreement, stating that in view of the Decision

denying the Reexamination Request, all funds that had been deposited into the Escrow

Accoun to that point should be immediately payable to Star Lock.[5]  A true and current

copy of this Notice is attached as Exhibit L.  Following receipt of this Notice, TriTeq did

finally on October 23, 2007, provide the underfunded amount of $277,681.84 into the

Escrow Account.  (Ex. J at 3.)

TriTeq, however, refused to join with Star Lock in a joint notice to the

Escrow Agent instructing that all funds in the Escrow Account should be immediately

payable to Star Lock, as required by the Escrow Agreement.  Instead, TriTeq filed a

petition in the Patent Office seeking review of the October 5, 2007 Decision.  No right to

---

[5] TriTeq deposited $363,708.00 into the Escrow Account on or about August 2, 2007, and an additional $277,681.84
on or about October 23, 2007 for a total of $641,389.84.

file such a petition was provided for in the Settlement Agreement.[6]  To the contrary, paragraph 4.3 of the Settlement Agreement provides that upon the issuance of the October 5, 2007 decision, all funds in (or required to be in) the Escrow Account were *immediately* payable to Star Lock, and that all future Contingent Payments should be made not into the Escrow Account but to Star Lock directly.

On or about October 31, 2007, TriTeq made a quarterly payment under the Settlement Agreement covering the third quarter of 2007.  As a result of the October 5, 2007 Decision, both the Contingent and Non-Contingent Payments should have been made directly to Star Lock under paragraph 4.3 of the Settlement Agreement.  Instead, TriTeq paid only the Non-Contingent Payment to Star Lock and paid a Contingent Payment of $12,726.00 into the Escrow Account in violation of paragraph 4.3.  (Ex. J at 4.)

On January 29, 2008 the Patent Office issued a ruling granting TriTeq's petition for reconsideration of the October 5, 2007 Decision.  That ruling, however, had no force or effect on the parties' responsibilities under the Settlement Agreement, because Paragraph 4.3 provides that all funds in (or required to be in) the Escrow Account were immediately payable to Star Lock upon the issuance of the October 5, 2007 Decision.

On or about January 31, 2008, TriTeq made a quarterly payment under the Settlement Agreement covering the fourth quarter of 2007.  As a result of the October 5, 2007 Decision, both the Contingent and Non-Contingent Payments should have been made directly to Star Lock under paragraph 4.3 of the Settlement Agreement.  Instead,

---

[6] Although the right to file a petition exists under the rules of the Patent Office, the Settlement Agreement does not allow TriTeq to rely on any such petition in avoiding the immediate effect of the denial of the Request.

TriTeq paid only the Non-Contingent Payment to Star Lock and paid a Contingent Payment of $3570.00 into the Escrow Account in violation of paragraph 4.3.  (Ex. J at 5.) In addition, TriTeq withheld $1.50 per unit, or $2677.50, from the Contingent Payment on the basis that the January 29, 2008 ruling amounted to a grant of the reexamination, reducing TriTeq's obligation by $1.50 per unit pursuant to Paragraph 4.4 of the Settlement Agreement.  Instead, the **_full_** amount of the Contingent Payment should have been paid to Star Lock, and TriTeq's actions amounted to a further breach of paragraph 4.3 of the Settlement Agreement.

On or about April 29, 2008, TriTeq made a quarterly payment under the Settlement Agreement covering the first quarter of 2008.  As a result of the October 5, 2007 Decision, both the Contingent and Non-Contingent Payments should have been made directly to Star Lock under paragraph 4.3 of the Settlement Agreement.  Instead, TriTeq paid only the Non-Contingent Payment to Star Lock and paid a Contingent Payment of $8482.00 into the Escrow Account in violation of paragraph 4.3.  (Ex. J at 6.) In addition, TriTeq withheld $1.50 per unit, or $6361.50 from the Contingent Payment on the basis that the January 29, 2008 ruling amounted to a grant of the reexamination, reducing TriTeq's obligation by $1.50 per unit pursuant to Paragraph 4.4 of the Settlement Agreement.  Instead, the **_full_** amount of the Contingent Payment should have been paid to Star Lock, and TriTeq's actions amounted to a further breach of paragraph 4.3 of the Settlement Agreement.

Then, on or about July 30, 2008, TriTeq made a quarterly payment under the Settlement Agreement covering the second quarter of 2008.  As a result of the October 5, 2007 Decision, both the Contingent and Non-Contingent Payments should

11

have been made directly to Star Lock under paragraph 4.3 of the Settlement Agreement.

Instead, TriTeq paid only the Non-Contingent Payment to Star Lock and paid a

Contingent Payment of $1940.00 into the Escrow Account in violation of paragraph 4.3.

(Ex. J at 7.)  In addition, TriTeq withheld $1.50 per unit, or $1,455.00, from the

Contingent Payment on the basis that the January 29, 2008 ruling amounted to a grant of

the reexamination, reducing TriTeq's obligation by $1.50 per unit pursuant to Paragraph

4.4 of the Settlement Agreement.  Instead, the ***full*** amount of the Contingent Payment

should have been paid to Star Lock, and TriTeq's actions amounted to a further breach of

paragraph 4.3 of the Settlement Agreement.

        D.      <u>Conclusion Of Reexamination And Later Developments</u>

On or about September 5, 2008, the Patent Office issued a decision

consistent with its original denial of the Reexamination Request, confirming Claims 27

and 28 of the '161 patent and thereby terminating the reexamination.  (See Ex. M.) [7]  In

the action, the Examiner stated that "Poe [the reference on which the Patent Office

granted TriTeq's petition] fails to show the cinch cam rotation as required by the claims."

(*Id.* at 2-3.)  Shortly thereafter, on or about September 17, 2008, Star Lock sent a Notice

to the Escrow Agent under Paragraph 3(a) of the Escrow Agreement and Paragraph 4.5 of

the Settlement Agreement, stating that in view of this action, the sum of $384,972.00

(representing $2.00 per unit) from the Escrow Account should be immediately payable to

Star Lock (with the remaining principal balance of $277,681.84 remaining in the Account

for future disposition).  (See Ex. O.)

---

[7] The Patent Office issued a formal Reexamination Certificate confirming Claims 27 and 28 on November 25, 2008. (See Ex. N.)

Later, after the filing of Star Lock's Second Amended Complaint and an abortive settlement conference before the Court in November 2008, Star Lock availed itself of the provision in the Settlement Agreement allowing it to have an audit and inspection done of TriTeq's records relating to sales of the Licensed Products.  (See Ex. P; Ex. A ¶ 3.3.)  Following some extended discussions between the parties regarding the timing and scope of the audit, TriTeq's counsel reported on January 30, 2009 that based on its own informal "internal audit," TriTeq expected that the audit would reveal an undercounting of units used to compute the royalty owing to Star Lock.  (See Ex. Q.)  This revelation led the parties to negotiate and execute a Second Addendum to the Settlement Agreement ("Second Addendum," Ex. R).

The Second Addendum provides essentially that in exchange for Star Lock assuming the cost of the audit (except for certain conditions) and forgiving any interest that might be due on undercounted units, TriTeq would immediately cooperate in providing a joint notice to the Escrow Agent instructing that the portion of the funds in the Escrow Account ($384,972.00) that was the subject of Star Lock's September 2008 notice (see Ex. R at ¶ 2) be paid immediately to Star Lock.  The joint notice has now been sent to National City Bank, and the parties are awaiting National City's compliance with the instructions (see Ex. S).  The release of funds pursuant to the Second Addendum would obviate Count III of Star Lock's Second Amended Complaint, and would leave $277,681.84 in the Escrow Account for disposition pursuant to the instant motion.  Meanwhile, the audit has commenced on Thursday, February 26, 2009.[8]

---

[8] Depending upon the results of the audit, and whether or not Star Lock and TriTeq are in agreement on the additional amounts owed Star Lock, Star Lock reserves the right to seek a further amendment of the Complaint to assert claims relating to the underpayment.

E.    Status Of Amounts To Be Recovered

Presuming that National City Bank acts in accordance with the parties' instructions and $384,972.00 is paid from the Escrow Account to Star Lock, $277,681.84 will remain for disposition in the Escrow Account.  In addition, in its payments of January 31, April 29, and July 30, 2008, TriTeq withheld $10,494.00 from its payments to Star Lock and/or into the Escrow Account.  Thus, Star Lock seeks to recover a total of $288,175.84.

## III.    ARGUMENT

A.    Applicable Standards

1.    Summary Judgment Standards

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The initial burden of showing the lack of a genuine issue of fact rests with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has shown prima facie that no issue of fact exists, however, the burden shifts to the non-moving party to demonstrate that specific facts exist that would justify denial of the motion. *Id.* at 324.

2.    Contract Interpretation Standards

Summary judgment may be particularly suitable in cases dealing with contract interpretation, because, if the contract is clear and unambiguous, its interpretation is a matter of law, and there is no issue of fact to determine. *O'Neill v. Kemper Ins. Cos.*, 497 F.3d 578, 582 (6th Cir. 2007); *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984),

15 Ohio St.3d 321, 322, 474 N.E.2d 271, 272, citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146.  When a contract's written language is a complete and accurate integration of the parties' contract, then the parol evidence rule precludes the introduction of evidence of conversations or declarations which occurred prior to or contemporaneous with the formation of the written contract and which attempt to vary or contradict the written terms of the contract. *Galmish v. Cicchini* (2000), 90 Ohio St. 3d 22, 27, 734 N.E.2d 782, 788; *AmeriTrust Co. v. Murray* (1984), 20 Ohio App.3d 333, 335, 486 N.E.2d 180, 183.

Common words appearing in a contract are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument. *First National Bank v. Houtzer* (1917), 96 Ohio St. 404, 406-407, 117 N.E. 383, 384; *Garlick v. McFarland* (1953), 159 Ohio St. 539, 545, 113 N.E.2d 92, 95; *Olmstead v. Lumbermens Mutl. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 259 N.E.2d 123, 126.

      B.     TriTeq Breached The Settlement Agreement
             By Failing To Pay All Funds Directly To Star Lock
             <u>After Failing To Timely Or Properly File Its Reexamination Request</u>

TriTeq was provided a limited, carefully crafted right to seek a Second Reexamination of the '161 Patent, precisely constructed as to time and substance, and it failed to exercise that right properly or timely.  By failing to submit a single, complete and correct Second Reexamination Request accepted for filing by the Patent Office by March 30, 2007, or within thirty days' of Star Lock providing notice to TriTeq of its failure to file by that date, as required by Paragraphs 4.1 and 8.1 of the Settlement Agreement, TriTeq has failed to comply with the Settlement Agreement, resulting in all Contingent Payments being payable directly to Star Lock.

1.      TriTeq Failed to File by May 10, 2007

First, TriTeq failed to file its reexamination request by May 10, 2007, as required by paragraph 4.1 of the Settlement Agreement and Star Lock's notice dated April 10, 2007. Although TriTeq attempted to submit reexamination materials by this date (and submitted materials that were corrected on various clerical issues such as typographical errors on May 30, 2007), the Patent Office in its June 18, 2007 communication determined that the materials submitted failed to comply with the applicable rules for reexamination requests. Specifically, the Patent Office determined that two references cited by TriTeq, a patent to Falk and an American Society of Mechanical Engineers document, were not substantively addressed in the body of TriTeq's request. (Ex. G at 6.) This put TriTeq's submission in violation of 37 C.F.R. § 1.510(b), which provides that a reexamination requester must provide a detailed explanation of the pertinency and manner of applying the cited art to the claims. Subsections 1.510(c) and (d) go on to provide that if the requirements of, inter alia, subsection (b) are not met, then the reexamination request *will not be granted a filing date*, and that the filing date is the date on which all the requirements are met.

Not only do these sections of the patent regulations dictate that TriTeq was not entitled to a timely filing *date*, but the patent statute itself compels the holding that the request could not be deemed as filed by the deadline of May 10, 2007. Sections 301 to 307 of the Patent Law govern the filing and conduct of reexamination proceedings, and section 303(a) provides, in pertinent part:

> Within three months following *the filing* of a request for reexamination under the provisions of section 302 of this title,[9] the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request.

---

[9] Section 302 includes the mandate that the request "must set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." 15 U.S.C. § 302.

(15 U.S.C. § 303(a) (emphasis added).)

       37 C.F.R. §§ 1.510(d) and 1.515(a) provide that a request will be given a filing date when all applicable requirements have been met (in this case July 9, 2007), and that the request will be decided within three months of the filing date (in this case by October 9, 2007). The Patent Office, however, is without power to promulgate a regulation allowing longer than three months to decide a reexamination request after it is *filed,* in contravention of section 303(a). If TriTeq's request had actually been filed on May 10, 2007, then section 303(a) provides that the Patent Office would had to have been ruled on the request by August 10, 2007. This did not happen. Instead, the Patent Office specifically stated in its July 17, 2007 communication (Ex. I.) that the Office would rule within three months of the official "filing date" of July 9, 2007, which it did on October 5, 2007. This was permissible under the statute only if the filing date of July 9, 2007 is also the date on which the request was *"filed"* within the meaning of section 303(a).

       TriTeq in its response to the Patent Office communication clearly understood the import of its request not being accorded the filing date of May 10, 2007. Thus, TriTeq asked in its response sent on July 9, 2007 that the Patent Office accord it the May 10 filing date. (Ex. H at 4.) The Patent Office, however, correctly applied the law and determined that the filing date was July 9, 2007, the date when the requirements of section 1.510(b) were met. Ex. I.

       The Settlement Agreement clearly provides that unless TriTeq *filed* the reexamination request by the required date (May 10, 2007), all the monies in or required to be in the Escrow Account would become *immediately* due and owing to Star Lock. In order for TriTeq, then, to avoid such obligation, it must argue that even though its materials were not accorded a filing date until July 9, 2007, it nevertheless filed the materials on May 10, 2007.

Such an argument tortures the plain meaning of the Settlement Agreement and, as discussed above, would result in the absurd conclusion that the Patent Office violated Section 303 of the Patent Law.  The plain meaning of a filing date is the date on which materials are filed.  Since the Patent Office has held that the filing date for the TriTeq request was July 9, 2007, those materials must be deemed to have been filed on that date.  As this date is two months later than the date by which TriTeq was required to have filed the materials, the Settlement Agreement plainly provides that all sums were immediately due and owing to Star Lock.  By failing to pay these sums to Star Lock, TriTeq is in breach of the Settlement Agreement.

> 2.      TriTeq's July 9 Submission Included
>         Substantive, and not Only Procedural, Changes

TriTeq's July 9 filing was also flawed because it made substantive amendments to the request, again in violation of the Settlement Agreement.

Paragraph 4.2 of the Settlement Agreement provides that TriTeq could resubmit or supplement the request only "for purposes of correcting clerical or procedural flaws in the request."[10]  The above deficiency with respect to section 1.510(b), however, was not a clerical or procedural flaw, but was rather a substantive one.  As the Patent Office stated in its June 18, 2007 communication, "[i]f the requester were permitted [to] omit an explanation of how such documents cited in the request are applied to the patent claims, an undue burden would be placed on the Office to address each document in the determination of the request."  Ex. G at 7.  By changing the list of cited art used to support the request, TriTeq substantively amended the request, again in violation of the Settlement Agreement.  As a result, Star Lock was recover all the funds for this additional reason.

> C.      TriTeq Breached the Settlement And Escrow

---

[10] By way of contrast, Star Lock acknowledges that the May 30, 2007 resubmission by TriTeq to correct typographical errors was a "clerical or procedural flaw."

Agreements By Failing To Release All Funds
<u>To Star Lock After The Denial Of The Reexamination Request</u>

Even if the Court concludes that through all of its misadventures, TriTeq filed its reexamination request in a timely and proper manner as of May 10, 2007, such finding would not assist TriTeq in avoiding its obligation to Star Lock under the Settlement and Escrow Agreements because the Settlement Agreement provides that all funds then in or due to be in the Escrow Account were to be payable to Star Lock ***immediately*** upon a denial of the reexamination request by the Patent Office. This occurred on October 5, 2007, when the Patent Office issued its 13-page decision attached as Exhibit K setting forth in detail the reasons why the Patent Office found that no substantial new question of patentability was presented by TriTeq's request.

Following the receipt of that Decision by the Patent Office, Star Lock, pursuant to paragraphs 8.1 of the Settlement Agreement and 3(a) of the Escrow Agreement, sent a formal notice to TriTeq and to the Escrow Agent stating that in view of the denial of the request, TriTeq should cooperate with Star Lock in sending joint instructions to the Escrow Agent to pay all funds from the Escrow Account to Star Lock. (See Ex. L.) TriTeq refused to cooperate in clear violation of the plain and unambiguous language of paragraph 4.1 of the Settlement Agreement and paragraph 3(a) of the Escrow Agreement.

"Immediately" is not a difficult term to define, either in a legal document or in layman's understanding. It means exactly what it says – ***at the very moment in time*** when the Patent Office issued its October 5, 2007 Decision denying TriTeq's request, all amounts then in or due to be in the Escrow Account were payable to Star Lock; those funds became Star Lock's equitable property on that date. Nothing TriTeq has or could point to can alter the plain and unambiguous language of this provision of the Settlement Agreement.

Moreover, other provisions of the agreements between the parties make clear that if the parties had intended for TriTeq to have the right to challenge or appeal the Decision of the Patent Office, they could have provided for that to be the case.  In the Escrow Agreement, at paragraph 3(a) – the very provision that TriTeq is breaching − the parties provide that the Escrow Agent shall pay funds out of the Escrow Account only in accordance with joint instructions of both parties or "*a final and non-appealable*" order of a court of competent jurisdiction.  This "final and non-appealable" language is conspicuously absent from the Settlement Agreement. The absence of that language, combined with the presence of the term "immediately," compels the legal conclusion that the funds in the Escrow Account became Star Lock's equitable property as of October 5, 2007; that TriTeq had an absolute duty to cooperate with Star Lock in providing joint instructions to the Escrow Agent to release those funds to Star Lock; and that TriTeq's royalty payments following that date should have included all contingent and non-contingent amounts paid directly to Star Lock.

TriTeq did not cooperate, however, in providing joint instructions to the Escrow Agent and continued to pay contingent payments into the Escrow Account.  Moreover, TriTeq withheld $1.50 from the contingent payments it made into the Escrow Account on January 31, April 29, and July 30, 2008, based on its incorrect contention that the reversal of the original Decision entitled it to withhold those amounts.  This Court should therefore order TriTeq to cooperate with Star Lock in providing joint instructions to the Escrow Agent to release all funds to Star Lock and should order TriTeq to pay the amounts it improperly withheld to Star Lock.

Moreover, the Addendum at paragraph 3(A) provides that in the event that an Other Party (here, TriTeq) fails to cooperate with a Noticing Party (here, Star Lock) in releasing funds, and any dispute is resolved in the Noticing Party's favor, then the Other Party must pay

20

interest to the Noticing Party from the day after the notice was given until the day the funds are released.  (See Ex. C.)  Should the Court find that TriTeq failed to cooperate, therefore, Star Lock is also entitled to receive interest on the principal in the Escrow Account.

        D.        Star Lock Is Also Entitled To
                <u>Judgment On TriTeq's Counterclaims</u>

        TriTeq has asserted counterclaims in this case against Star Lock, claiming that it is Star Lock, and not TriTeq, who is in breach of the Settlement Agreement and the Escrow Agreement or, alternatively, that the agreements be set aside for a failure of meeting of the minds or mistake.  With respect to the breach claim, as both parties' claims are based upon the construction of the agreements, to the extent that Star Lock is entitled to summary judgment in its favor on its claims, Star Lock must also be entitled to summary judgment on TriTeq's counterclaims as well.  With respect to TriTeq's claim of mistake or failure of meeting of the minds, as noted above, TriTeq failed to avail itself of any opportunity to develop evidence through deposition of Star Lock that would support its claim.  Therefore, Star Lock requests that the Court enter summary judgment in its favor on TriTeq's counterclaims.

        E.        <u>Relief Requested</u>

        To review, Star Lock requests that the Court, in granting its motion for summary judgment, accord it the following relief by entering an order:

        1)        Declaring that TriTeq failed to timely or properly file its reexamination request under the Settlement Agreement;

        2)        Declaring that all sums in or due to be in the Escrow Account as of October 5, 2007 were immediately payable to Star Lock;

        3)        Declaring that all sums currently in the Escrow Account are due and owing to Star Lock, and ordering that TriTeq take all actions necessary to effect the delivery of

the funds in the Escrow Account to Star Lock, including, without limitation, cooperating with

Star Lock in communicating joint instructions to the Escrow Agent to pay all funds in the

Escrow Account to Star Lock;

        4)    requiring that TriTeq pay interest to Star Lock on the sums in the Escrow

Account from October 16, 2007 according to the terms of the First Addendum; and

        5)    requiring that TriTeq pay the sum of $10,494.00 to Star Lock, together

with prejudgment interest.

## IV.    CONCLUSION

        For all the foregoing reasons, Star Lock respectfully requests that this Court grant

its motion and enter summary judgment in its favor on Counts I and II of its Second Amended

Complaint and on Counts I-III of TriTeq's Counterclaims.

        Respectfully submitted,


        /s/Thomas B. Ridgley_____
        Thomas B. Ridgley      (0000910)
        VORYS, SATER, SEYMOUR AND PEASE LLP
        52 East Gay Street, P.O. Box 1008
        Columbus, Ohio  43216-1008
        Telephone:    (614) 464-6229
        Facsimile:    (614) 719-4923
        tbridgley@vssp.com

        Trial Attorney for Plaintiff, Star Lock Systems, Inc.


OF COUNSEL:

William H. Oldach III      (0064370)
VORYS, SATER, SEYMOUR AND PEASE LLP
1828 L Street, N.W.
Eleventh Floor
Washington, DC  20036
Telephone:    (202) 467-8800
Facsimile:    (220) 467-8900

Peter A. Lusenhop                    (0069941)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, PO Box 1008
Columbus, Ohio  43216-1008
(614) 464-8263 Phone
(614) 719-4831 Fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2009, the foregoing Motion for Summary Judgment and Memorandum of Law in Support thereof was filed electronically with the Court's Electronic Filing System, which will provide notice of the filing to counsel of record as follows:

> Ronald S. Kopp, Esq.
> Paul Lombardi, Esq.
> Roetzel & Andress, LPA
> 222 South Main Street
> Akron, Ohio  44308
> rkopp@ralaw.com
> plombardi@ralaw.com

> /s/William h. oldach iii
> William H. Oldach III

02/27/2009  Washington 851986