# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**STAR LOCK SYSTEMS, INC.**

      **Plaintiff,**

      v.

**TRITEQ LOCK AND SECURITY, L.L.C.,**

      **Defendant.**

Case No. 2:07-cv-797
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) a motion for summary judgment (Doc. # 69) filed by Plaintiff, Star Lock Systems, Inc. ("Star Lock"), a memorandum in opposition (Doc. # 75) filed by Defendant, TriTeq Lock and Security. L.L.C. ("TriTeq"), and a reply memorandum (Doc. # 77) filed by Star Lock; and

(2) a motion for partial summary judgment (Doc. # 70) filed by TriTeq, a memorandum in opposition (Doc. # 73) filed by Star Lock, and a reply memorandum (Doc. # 78) filed by TriTeq.

For the reasons that follow, this Court **GRANTS** Star Lock's motion for summary judgment (Doc. # 69) and **DENIES** TriTeq's motion for partial summary judgment (Doc. # 70).

## I. Background

In July 2003, Star Lock filed an action in this Court, Case No. 2:03-cv-616, in which it claimed that a lock made by TriTeq infringed on Patent No. 5,269,161, which Star Lock owns. After considerable litigation and periods of delay, the case between Star Lock and TriTeq ultimately resulted in a dismissal predicated on the parties having entered into a settlement

1

agreement that called for TriTeq to escrow various funds that would become available in whole or in part pending a possible patent reexamination proceeding in the U.S. Patent Office. (Docs. # 162, 163 in Case No. 2:03-cv-616.) In August 2007, however, Star Lock filed the instant case, claiming that TriTeq had breached the settlement agreement. (Doc. # 2.) This second litigation has also been marked by considerable delay, again related in part to proceedings in the U.S. Patent Office.

Both sides argue that the other has breached the settlement agreement, and both sides have previously moved for summary judgment. (Docs. # 39, 49.) During the period of time in which the motions were to be briefed, numerous disputes existed over discovery and the filing of an amended complaint. TriTeq sought to conduct certain discovery to bolster its interpretation of the settlement agreement, while Star Lock sought a protective order to prevent a Federal Rule of Civil Procedure 30(b)(6) deposition. The parties also sought leave to file additional briefs related to some of their motions, and the U.S. Patent Office proceedings concluded.

These various unusual circumstances were eventually resolved. The Court then issued an October 21, 2008 Opinion and Order (Doc. # 61) in which it denied without prejudice Star Lock's first motion for summary judgment (Doc. # 39) and denied TriTeq's motion for summary judgment, which included an unusual request to file a supporting argument only after conducting discovery (Doc. # 49). The parties remained free to move for summary judgment on whatever grounds they wished following discovery.

On October 24, 2008, Star Lock filed a three-count Second Amended Complaint that asserts claims for breach of contract in regard to the parties' settlement agreement (Counts I and III) and breach of contract in regard to the parties' escrow agreement (Count II). (Doc. # 62 ¶¶

39-47.) In response, TriTeq filed an Answer and Counterclaims to the Second Amended Complaint on October 30, 2008. (Doc. # 63.) That pleading asserts counterclaims for declaratory judgment (Count I), breach of contract (Count II), and breach of the escrow agreement (Count III). (*Id.* ¶¶ 18-27.) On February 27, 2009, each side filed new motions for summary judgment in regard to these amended pleadings. (Docs. # 69, 70.) Briefing has closed on these latest motions, which are now ripe for disposition.[1]

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of

---

[1] By both motion and oral communication with Chambers, Star Lock requested that the Court refrain from issuing a decision on the pending motions until a status conference could be held. (Doc. # 80.) On May 26, 2009, the Court held such a conference, at which time the parties informed the Court of various information, including that TriTeq had made additional payment into the escrow fund, and agreed that the Court could proceed to rule on the pending motions. The Court directed Star Lock to file a notice of the post-summary judgment motion information on the docket. In a subsequent letter to the Court, Star Lock represents that "the total amount in the Escrow Account awaiting disposition arising from the parties' respective cross-motions is $301,776.34." (Doc. # 82.)

material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

This case involves the interpretation of two agreements between Star Lock and TriTeq. In its briefing, Star Lock directs this Court to Ohio law to resolve the contract interpretation issues involved. Curiously, TriTeq does not discuss the issue of what law applies. This Court finds that Ohio law applies.

The Sixth Circuit has explained the contours of the applicable state law involved:

> Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court. *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (applying Ohio law); *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991) (applying Ohio law); *see also Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271, 272-73 (1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term."). "The role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 875 N.E.2d 561, 566 (2007). "The intent of the parties is presumed to reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 667 N.E.2d 949, 952 (1996); *accord State ex. rel Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 820

4

> N.E.2d 910, 915 (2004). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys*, 875 N.E.2d at 566; *accord Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978) ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."). However, "[e]xtrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham*, 667 N.E.2d at 952; *accord R.J. Reynolds*, 820 N.E.2d at 915. Nevertheless, a court "is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties" in the terms of their written contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261-62 (2003).

*Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). *See also Cook v. All State Home Mortg., Inc.*, No. 08-3564, 2009 WL 1391527, at *4 (6th Cir. May 15, 2009) ("The Ohio Supreme Court has held that if a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined." (citing *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272 (1984))).

The court of appeals has further discussed the issue of ambiguity in a contract under Ohio law rather extensively, stating:

> Contractual language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (2003) (quoting *Potti,* 938 F.2d at 647); *see also King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988); *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201, 1208 (1998). "[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract." *Covington*, 784 N.E.2d at 190. In determining whether contractual language is ambiguous, the contract "must be construed as a whole," *Tri-State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App.3d 1, 782 N.E.2d 1240, 1246 (2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick*, 50 Ohio App. 277, 197 N.E. 923, 926 (1934)), so as "to give reasonable effect to every provision in the agreement." *Stone v. Nat'l City Bank*, 106 Ohio App.3d 212, 665 N.E.2d 746, 752 (1995); *see also Burris v. Grange Mut. Co.*, 46 Ohio St.3d 84, 545 N.E.2d 83, 88 (1989) ("The meaning of a

5

contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable*764 construction is possible." (quoting *Karabin v. State Auto. Mut. Ins. Co.,* 10 Ohio St.3d 163, 462 N.E.2d 403, 406 (1984))). "[C]ommon words appearing in the written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander*, 374 N.E.2d at 150.

If the language in the contract is ambiguous, the court should generally construe it against the drafter. *See Central Realty Co. v. Clutter*, 62 Ohio St.2d 411, 406 N.E.2d 515, 517 (1980); *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 798 (6th Cir. 2003) (applying Ohio law). In particular, "where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the non-drafting party." *Westfield*, 797 N.E.2d at 1261. However, this *contra proferentem* rule does not allow a court to adopt an unreasonable interpretation of the contract. *Id.* (citing *Morfoot v. Stake*, 174 Ohio St. 506, 190 N.E.2d 573, 574 (1963)). Indeed, the purpose of the *contra proferentem* rule is to provide a means of determining which of two *reasonable* contractual interpretations should control. *See* Restatement (Second) of Contracts § 206 (1981) ("In choosing among the *reasonable meanings* of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds." (emphasis added)).

If the contract is silent, as opposed to ambiguous, with respect to a particular matter, *see Statler Arms, Inc. v. APCOA, Inc.*, 92 Ohio Misc.2d 45, 700 N.E.2d 415, 421 (1997) ("The fact that a contract ... is silent on a particular point does not make it ambiguous."), "it is not the function of courts in Ohio to formulate a new contract for the parties." *Fultz & Thatcher v. Burrows Group Corp.*, No. CA2005-11-126, 2006 WL 3833971, at *6 (Ohio Ct.App. Dec. 28, 2006) (unpublished) (citing *Aultman Hosp. Ass'n v. Comm. Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920, 924 (1989)). Rather, "[t]he parties to a contract are required to use good faith to fill the gap of a silent contract." *Burlington Res. Oil & Gas Co. v. Cox*, 133 Ohio App.3d 543, 729 N.E.2d 398, 401 (1999); *accord Myers v. Evergreen Land Dev. Ltd.*, No. 07 MA 123, 2008 WL 650774, at *5 (Ohio Ct.App. Mar. 6, 2008) (unpublished) ("An obligation of good faith generally arises only where a matter was not resolved explicitly by the parties.... [T]his duty is implied only under limited circumstances, such as when the contract is silent as to an issue. In such a case, the parties must use good faith in filling the gap."). " 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved

6

explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 75 Ohio St.3d 433, 662 N.E.2d 1074, 1082-83 (1996) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357-58 (7th Cir.1990)). "What the duty of good faith consists of depends upon the language of the contract in each case which leads to an evaluation of reasonable expectations of the parties." *Fultz & Thatcher*, 2006 WL 3833971, at *6.

*Savedoff*, 524 F.3d at 763-64.

Guided by this law, the Court turns to paragraph 3 of the first agreement at issue, the Settlement and Non-Exclusive License Agreement, which provides in part that

> TriTeq agrees to pay the sum of Six Dollars and Fifty Cents (USD$6.50) (the "Royalty Amount") for each unit Sale, Past and Future, of the Accused and Licensed Products, with the exception of Sales, Past and Future, from TriTeq to Royal. The Royalty Amount shall include a Non-Contingent Payment of $3.00 per unit and a Contingent Payment of $3.50 per unit that shall be payable subject to the following terms and conditions.

(Doc. # 72-2, at 3 § 3.) Paragraph 3 then proceeds to set forth the deadlines and procedures for making non-contingent payments and contingent payments, including reporting requirements, auditing rights, and delinquent payment practices. (*Id.* §§ 3.1 - 3.4.)

The next section of the settlement agreement, labeled as paragraph 4, describes the escrow account the parties agreed to utilize for contingent payments. This section provides:

**4.     Escrow Funds**

The Contingent Payments of the Royalty Amounts for Past and Future Sales shall be payable to TriTeq or to Star Lock from the Escrow Account as follows:

4.1     It is expressly contemplated by the Parties that TriTeq will file a request for a second reexamination of the '161 Patent with respect to Claims 27 and 28 of the '161 Patent (the "Second Reexamination"). If TriTeq does not file the Second Reexamination request by March 30, 2007, then Star Lock shall provide notice to TriTeq in the manner set forth in paragraph 8.1, below, and TriTeq shall have thirty (30) days therefrom to cure its failure by filing the request. If TriTeq does not cure the failure, then all amounts then in the Escrow Account, or required to be in the Escrow Account as of that date, whichever

amount being greater, shall be immediately paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above, shall instead be paid directly to Star Lock by TriTeq.

      4.2      TriTeq shall file only a single Second Reexamination request of the '161 Patent and shall not file, itself or through any other party, any further reexamination request or knowingly cooperate in any third party request; provided, however, that TriTeq may resubmit or supplement the single Second Reexamination request that it files for purposes of correcting clerical or procedural flaws in the request, so long as no additional new prior art reference or new basis for arguing the rejection of the claims is asserted.

      4.3      If the request for the Second Reexamination is denied by the U.S. Patent Office because it did not raise a substantial new question of patentability, then all amounts then in the Escrow Account or required to be in the Escrow account as of that date, whichever amount being greater, shall be immediately payable to Star Lock, and any Contingent Payments required to be paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above, shall instead be paid directly to Star Lock by TriTeq.

      4.4      If the request for the Second Reexamination is granted by the U.S. Patent Office, then an amount equivalent to $1.50 per unit for all Past and Future Sales then having been paid into the Escrow Account shall be paid out of the Escrow Account to TriTeq, and any Contingent Payments to be paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above shall be reduced by $1.50 per unit.

      4.5      If both Claims 27 and 28 are rejected in an initial Office Action in the Second Reexamination (following, optionally, Star Lock's filing a Patent Owner's Statement and TriTeq's filing a Requester's Reply), then an amount equivalent to $1.00 per unit for all Past and Future Sales then having been paid into the Escrow Account, shall be paid out of the Escrow Account to TriTeq, and any Contingent Payments to be paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above, shall be reduced by $1.00 per unit. If either Claim 27 or 28 is allowed or confirmed in the initial Office Action, then all amounts then in the Escrow Account, or required to be in the escrow Account as of that date, whichever amount being greater, shall be immediately payable to Star Lock, and any Contingent Payments to be paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above, shall instead be paid directly to Star Lock by TriTeq.

      4.6      If Claims 27 and 28 are rejected in a Final office Action in the Second Reexamination, then all remaining amounts then having been paid into the Escrow Account, together with interest pursuant to the Escrow Agreement,

> shall be paid out of the Escrow Account to TriTeq, and no future Contingent Payments shall be required to be paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above. If either Claim 27 or 28 is allowed or confirmed in any action following the initial Office Action, then all amounts then in the Escrow Account, or required to be in the Escrow Account as of that date, whichever amount being greater, shall be immediately payable to Star Lock, and any Contingent Payments to be paid into the Escrow Account by TriTeq from that date forward pursuant to paragraph 3, above, shall instead be paid directly to Star Lock by TriTeq; provided, however, that Star Lock shall neither make nor offer any amendment to either Claim 27 or 28, and Star Lock shall not participate in any telephonic or in-person interview with the Examiner at any time during the Second Reexamination where the substance or basis for rejection or patentability is a topic.

(Doc. # 72-2.)

Based on the foregoing language, Star Lock seeks summary judgment on Counts I and II of its Second Amended Complaint and on Counts I, II, and III of TriTeq's counterclaims. Star Lock's reasoning is as follows. TriTeq failed to file the Second Reexamination Request by March 30, 2007, as required in paragraph 4.1 of the settlement agreement. Star Lock therefore provide the paragraph 4.1 notice to TriTeq of the failure to file, which invoked that paragraph's 30-day deadline in which TriTeq could cure its failure to file by then filing the request. TriTeq submitted materials to the Patent Office on May 10, 2007, the last day of the deadline, and then submitted a corrected version of these materials to the Patent Office on May 30, 2007. The parties agree that the May 30, 2007 submission constituted the correction of a clerical or procedural flaw as permitted by paragraph 4.2.

The Patent Office then issued a Notice of Failure to Comply with *Ex Parte* Reexamination Request Filing Requirements, which stated that both May 2007 submissions were defective and giving TriTeq thirty days in which to cure these defects. This Patent Office notice stated that the reexamination request could not be processed because the request was missing

9

"[a] statement pointing out each substantial new question of patentability based on the cited patents & printed publications, and a detailed explanation of the pertinency and manner of applying the patents & printed publications to every claim for which reexamination is requested." (Doc. # 72-8, at 2.) An incorporated attachment to the notice further explained that the statement and explanation, which are required by 37 C.F.R. § 1.510(b)(1) and (2), are required "before a filing date is accorded to the request" for reexamination. (*Id.* at 7.)

In response to the Patent Office's notice, TriTeq submitted an additional filing on July 9, 2007, in which the company deleted portions of the list of prior art upon which it sought to obtain reexamination. TriTeq also requested that the Second Reexamination Request be given a filing date of May 10, 2007. In a July 17, 2007 communication, the Patent Office accepted the additional filing but designated the filing date as July 9, 2007. Star Lock concludes that TriTeq therefore failed to file its "curing" request within the 30-day deadline, which pursuant to paragraph 4.1 meant that all amounts then in the escrow account or required to be in the escrow account be paid to Star Lock.

This Court agrees with Star Lock's interpretation of the unambiguous settlement agreement as it relates to the events that transpired here. Although other potential deficiencies listed on the Patent Office's Notice of Failure to Comply with *Ex Parte* Reexamination Request Filing Requirements form arguably fall within the realm of clerical or procedural flaws that may occur in a reexamination request, the item the Patent Office marked as deficient here is a substantive deficiency. It constitutes the "meat" of the reexamination request and to deem its omission a mere clerical or procedural flaw would be to render those words meaningless. TriTeq's error is not a scrivener's error or the omission of a certification or even the failure to

include an attachment. Rather, TriTeq's lack of a statement and explanation is a failure to present the Patent Office with a reexamination request that contains the requisite grounds for reexamination. This is significant because, as noted, paragraph 4.2 of the settlement agreement only permits TriTeq to "resubmit or supplement the single Second Reexamination request that it files for purposes of correcting clerical or procedural flaws in the request." Although that paragraph does not permit TriTeq to resubmit or supplement the request to assert a "new basis for arguing the rejection of the claims," these limitations on new material cannot reasonably be read to transform any correction that fails to present new, or additional, material into a "clerical or procedural flaw." Rather, the settlement agreement prohibits substantive changes, which can *include* the submission of new material. This Court therefore agrees with Star Lock's conclusion that TriTeq's failure to include an "explanation is the epitome of a substantive flaw, not a clerical or procedural one." (Doc. # 73, at 6.) By deleting material as TriTeq did in its July 9, 2007 filing, TriTeq effectuated a substantive change in the basis for rejecting the claims, altering the character of the May 2007 submissions and the scope and nature of the reexamination request.[2]

Because TriTeq's reexamination request was therefore ultimately filed on July 9, 2007, TriTeq failed to file a "curing" reexamination request within the extended time period

---

[2] TriTeq argues that by admitting that the May 30, 2007 filing was to fix a clerical or procedural error, Star Lock has admitted that the May 10, 2007 filing was properly filed for purposes of the settlement agreement. (Doc. # 78, at 3 n.3.) This reasoning overlooks the fact that the May 30 filing was also defective, so it could not "stand in" for the earlier filing in order to constitute a "curing" reexamination request. It was not until TriTeq submitted a substantively altered reexamination request that a valid request was technically filed.

contemplated by paragraph 4.1 of the settlement agreement.[3] TriTeq attempts to evade this conclusion by arguing that there is a distinction between the act of filing and obtaining the filing date that the Patent Office assigns to a reexamination request. This self-serving characterization of 37 C.F.R. § 1.510 ignores that 35 U.S.C. § 303(a) uses the term "filing" rather than the phrase "filing date" in setting the three-month time period for Patent Office action.[4] This period

---

[3] Despite being afforded the opportunity for additional discovery, TriTeq has failed to present evidence that there was no meeting of the minds regarding the parties' agreement. TriTeq is correct in stating that the answer to the issues in this case "appears on the face of the contract in dispute." (Doc. # 78, at 2.) The intent of the parties' is indeed found within the four-corners of the settlement agreement and is evident from the plain meaning of that agreement. But TriTeq is incorrect in asserting that this intent included a re-submission of the sort involved here, because the July submission here presented a substantive change to the nature of the reexamination request.

Moreover, contrary to the representations of TriTeq's former counsel, the agreement expressly contemplates not a *guaranteed* full and complete review of the merits of a reexamination request, but only the *opportunity* to timely file a reexamination request (permitting non-substantive fixes) with any potential payment contingencies arising based on TriTeq having successfully taken advantage of the opportunity for which it bargained. Paragraph 4.1 of the settlement agreement in fact contemplates TriTeq failing to take advantage of the opportunity for reexamination, which contrasts with the extrinsic evidence found in the company's former counsel's self-serving statement that the parties never intended to afford TriTeq anything other than a merits review by the Patent Office. The unambiguous agreed-upon deadlines and plans in the event of a failure to file set forth in the settlement agreement would defeat the extrinsic evidence even if resort to such outside-the-agreement evidence were necessary.

[4] 37 C.F.R. § 1.510, which is titled "Request for ex parte reexamination," provides:

(a) Any person may, at any time during the period of enforceability of a patent, file a request for an ex parte reexamination by the Office of any claim of the patent on the basis of prior art patents or printed publications cited under § 1.501. The request must be accompanied by the fee for requesting reexamination set in § 1.20(c)(1).

(b) Any request for reexamination must include the following parts:

(1) A statement pointing out each substantial new question of patentability based on prior patents and printed publications.

(2) An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited prior art to every claim for which reexamination is requested. If appropriate the party requesting reexamination may also point out how claims distinguish over cited prior art.

(3) A copy of every patent or printed publication relied upon or referred to in paragraph (b)(1) and (2) of this section accompanied by an English language translation of all the necessary and pertinent parts of any non-English language patent or printed publication.

(4) A copy of the entire patent including the front face, drawings, and specification/claims (in double column format) for which reexamination is requested, and a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent. All copies must have each page plainly written on only one side of a sheet of paper.

(5) A certification that a copy of the request filed by a person other than the patent owner has been served in its entirety on the patent owner at the address as provided for in § 1.33(c). The name and address of the party served must be indicated. If service was not possible, a duplicate copy must be supplied to the Office.

(c) If the request does not include the fee for requesting ex parte reexamination required by paragraph (a) of this section and meet all the requirements by paragraph (b) of this section, then the person identified as requesting reexamination will be so notified and will generally be given an opportunity to complete the request within a specified time. Failure to comply with the notice will result in the ex parte reexamination request not being granted a filing date, and will result in placement of the request in the patent file as a citation if it complies with the requirements of § 1.501.

(d) The filing date of the request for ex parte reexamination is the date on which the request satisfies all the requirements of this section.

(e) A request filed by the patent owner may include a proposed amendment in accordance with § 1.530.

(f) If a request is filed by an attorney or agent identifying another party on whose behalf the request is being filed, the attorney or agent must have a power of attorney from that party or be acting in a representative capacity pursuant to § 1.34.

logically does not begin to run until the reexamination request is complete, which is when the Patent Office assigns it a filing date (as § 1.510(d) makes clear in providing that "[t]he filing date of the request for ex parte reexamination is the date on which the request satisfies all the requirements of this section"). 37 C.F.R. § 1.510(d). Thus, the rule employs "filing date" to mean "filing" in the statutory sense.

This plain-meaning construction tracks what actually occurred before the Patent Office here. The Patent Office issued a decision on October 5, 2007, within the three-month statutory deadline that began to run on July 9, 2007. TriTeq's strained reading of the settlement agreement, which regards the date of initial submission of the flawed reexamination request as the meaningful "filing," seeks to ignore the statute and the Patent Office's own understanding of the statute and related rules in favor of an interpretation that the language of the statute, rule, and settlement agreement do not support. Due to TriTeq's breach regarding the timing of the

---

37 C.F.R. § 1.510.

The relevant statutory provision involved in today's analysis, 35 U.S.C. § 303(a), provides:

> **(a)** Within three months following the filing of a request for reexamination under the provisions of section 302 of this title, the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. On his own initiative, and any time, the Director may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of section 301 of this title. The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.

35 U.S.C.A. § 303(a).

14

reexamination request–*i.e.*, TriTeq failed to cure its failure under paragraph 4.1–Star Lock was therefore entitled to the contingent payments regardless of the eventual outcome of the request.[5] All amounts then in the escrow account or required to be in the escrow amount as of the date of the failure to cure were immediately payable to Star Lock, and TriTeq should have paid all contingent payments from that date forward directly to Star Lock.

This leads to the parties' debate over each side's purported breach of the escrow agreement. Star Lock argues that TriTeq breached its obligation to fund the escrow account in a full and timely manner. A portion of this argument relates to escrow funds that were to be paid to Star Lock upon the decision of the Patent Office. The parties' arguments in this regard appear to the Court to be moot based on the disposition of the settlement agreement breach discussed above, the fact that the parties have agreed on the amount that should be in the escrow account, and the fact that TriTeq has apparently belatedly funded the account to an agreed-upon amount. Because there was no timely reexamination request under the terms of the settlement agreement, the ultimate disposition of the untimely reexamination request by the Patent Office is of no consequence in regard to the escrow-account related claims. The escrow funds are due immediately to Star Lock., and TriTeq must undertake all required action to effectuate payment, including the payment of applicable interest.[6]

---

[5] The Court agrees with Star Lock's blunt description of the result: "Once it was determined that the triTeq reexamination request had a filing date of July 9, 2007, that meant that under the statute, the request was filed on that date. At that moment, for purposes of the Settlement Agreement, the reexam request was ***dead on arrival***." (Doc. # 77, at 3.)

[6] The Court has not been privy to much of the discussion between the parties involving the funding of the escrow account. Based upon this Court's May 26, 2009 telephone conference and the resulting June 15, 2009 letter from Star Lock (Doc. # 82), the Court thinks that, despite the more complex debate presented in the pre-audit cross-motions for summary judgment, the

### III. Conclusion

For the reasons stated herein, the Court **GRANTS** Star Lock's motion for summary judgment (Doc. # 69) and **DENIES** TriTeq's motion for partial summary judgment (Doc. # 70).

Today's decision does not dispose of this action, however, because Count III of the Second Amended Complaint remains outstanding. The briefing indicates that the parties contemplated a stipulation dismissing this count, but to date no action has been taken to streamline the pleadings in this regard. (Doc. # 78, at 1 n.1.) The Court **ORDERS** the parties to discuss resolution of the remainder of this case and inform the Court in writing of any decision reached, or the failure to reach a decision, by July 6, 2009.

**IT IS SO ORDERED.**

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

funding dispute is now simply what becomes of the $301,76.34 currently in the escrow account. To the extent that the Court has erred in framing what remains of the issue due to a lack of current or complete information, the Court will revisit any unresolved issues as necessary and directs the parties to schedule a telephone conference so that any outstanding matter can be promptly resolved.